1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                        CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  In re AFI HOLDING, INC., | Nos.   CV 05-3232 PA |
| 12            Debtor | CV 05-4275 PA<br>CV 05-7695 PA<br>CV 07-3646 PA |
| 13 | CV 07-3651 PA<br>CV 07-3653 PA      * |
| 14  KEITH MCKENZIE | CV 07-4472 PA<br>CV 07-4483 PA<br>CV 07-4489 PA |
| 15            Appellant/Cross-Appellee, | |
| 16         v. | ORDER REMANDING ACTIONS TO<br>BANKRUPTCY COURT |
| 17  CHRISTOPHER R. BARCLAY, Chapter<br>7 Trustee, | |
| 18            Appellee/Cross-Appellant | Bankruptcy No.  LA 01-41567 VZ<br>Adversary No.  ADV 03-2502 VZ |
| 19  AND RELATED APPEALS | |

20

21         Before the Court are appeals and cross-appeals from judgments entered by the United

22   States Bankruptcy Court for the Central District of California in adversary proceedings

23   brought by Carolyn A. Dye, the former Chapter 7 trustee appointed to administer the

24   bankruptcy estate of Advance Finance, Inc. and its related entities (collectively "AFI").[1/]

25   The Bankruptcy Court entered the judgments after granting the Trustee's summary judgment

26   _____

27   [1/]      While these proceedings were pending, Carolyn Dye was removed as the trustee and
     replaced by successor trustee Christopher R. Barclay.  Both the former trustee and the
28   successor trustee will be referred to as "Trustee."

1  motions seeking to avoid transfers AFI made to its investors prior to AFI's bankruptcy.  The

2  appellants, who were defendants in the adversary proceedings (the "Investors"), challenge

3  the entry of judgment against them.  The Trustee's cross-appeals challenge the Bankruptcy

4  Court's denial of prejudgment interest.

5      The Court has already considered similar judgments entered by the Bankruptcy Court

6  in adversary proceedings involving some of AFI's other investors.  In those earlier appeals,

7  after considering both In re United Energy Corp., 944 F.2d 589 (9th Cir. 1991) and In re

8  Agric. Research & Tech. Group., Inc. (Agretech), 916 F.2d 528 (9th Cir. 1990), this Court

9  reversed the Bankruptcy Court after concluding that the Investors "exchanged reasonably

10  equivalent value when their rights to restitution were proportionately reduced by the . . .

11  payments they received."  In re United Energy Corp., 944 F.2d at 595.  As a result, the Court

12  reversed the Bankruptcy Court's judgments to the extent that AFI's payments to the

13  Investors extinguished the Investors' rights to recover the principal they had invested.  The

14  Court affirmed the Bankruptcy Court's judgment with respect to any amounts paid to the

15  Investors as "interest" above the amounts invested, declined to rule on the Bankruptcy

16  Court's denial of prejudgment interest, and remanded to the Bankruptcy Court for

17  consideration of the Investors' good faith defenses.  The Investors in those earlier

18  proceedings appealed this Court's rulings to the Ninth Circuit.  On April 16, 2008, the Ninth

19  Circuit affirmed this Court's rulings and remanded the action to this Court.  In re AFI

20  Holding, Inc. (Mackenzie), 525 F.3d 700 (9th Cir. 2008).

21      Following receipt of the Ninth Circuit's Mandate in Mackenzie, this Court issued an

22  order to show cause why Mackenzie and all of the other related appeals pending in this

23  Court should not be remanded to the Bankruptcy Court for further proceedings consistent

24  with the Ninth Circuit's decision in Mackenzie.[2/]  In their response to the order to show

25  _____

26  [2/]      In addition to Mackenzie, Case Nos. CV 05-3232 PA and CV 05-4275 PA, the Court
currently has the following actions pending before it:  CV 05-7695 PA (which is a

27  consolidated appeal involving appeals originally filed as Case Nos. CV 05-7695 PA, CV 05-

28  7709 PA, CV 05-7710 PA, CV 05-8229 PA, CV 05-8291 PA, CV 05-8346 PA, CV 05-8349

1    cause, the Investors argued that rather than remanding these actions, the Court should

2    instead withdraw the references to the Bankruptcy Court and assume responsibility for the

3    actions.[3]   In a footnote, the Investors also stated that <u>Mackenzie</u> "left additional common

4    issues . . . to another day" and argued that this Court should address those issues rather than

5    remand all of the pending actions to the Bankruptcy Court.  The Court then ordered the

6    parties to supplement their responses to the order to show cause to identify any issues that

7    were raised in the pending appeals but not resolved by the Ninth Circuit.

8              In their further response to the order to show cause, the Investors identified the

9    following issues:  (1) whether the Bankruptcy Court committed reversible error by

10   concluding that the trustee had standing to pursue these avoidance actions; (2) whether the

11   Bankruptcy Court committed reversible error by precluding the Investors from asserting

12   affirmative defenses of unclean hands, <u>in pari delicto</u>, offset, and recoupment; (3) whether

13   the Bankruptcy Court committed reversible error in its evidentiary rulings; and (4) with

14   respect to Adelaida San Diego, whether the Bankruptcy Court erroneously concluded that

15   she was an initial transferee rather than a custodian.  Though the Investors apparently desire

16

17

18

19
     _____

20   PA, CV 05-8392 PA, CV 05-8436 PA, CV 05-8453 PA, CV 05-8562 PA, CV 05-8583 PA,
     CV 05-8593 PA, CV 05-8980 PA, CV 05-8986 PA, CV 05-8988 PA, CV 05-8989 PA, CV
21   06-0001 PA, CV 06-0042 PA, CV 06-0049 PA, CV 06-0131 PA, CV 06-0186 PA, CV 06-
     0258 PA, CV 06-0280 PA, CV 06-0295 PA, CV 06-0335 PA, CV 06-0466 PA, CV 06-0470
22   PA, CV 06-0475 PA, CV 06-0493 PA, CV 06-0494 PA, CV 06-0601 PA, CV 06-0602 PA,
     CV 06-0630 PA, CV 06-0637 PA, and CV 06-0666 PA), CV 07-3646 PA, CV 07-3651 PA,
23   CV 07-3653 PA, CV 07-4472 PA, CV 07-4483 PA, and CV 07-4489 PA

24

25   [3]       The Court has repeatedly denied the Investors' requests that this Court withdraw the
     references to the Bankruptcy Court as premature.  The Court continues to believe that
26   withdrawal at this stage is inappropriate.  Moreover, by raising the issue in response to an
     order to show cause having nothing to do with withdrawal, the Investors have not properly
27   put the matter before the Court by way of noticed motion as required by the Local Rules.
     <u>See</u> Local Rule 6-1.
28

1   an additional opportunity to fine-tune their arguments on these issues, each of the issues has

2   already been adequately briefed.[4/]

3       A.    The Trustee's Standing to Pursue these Avoidance Actions

4       To avoid transfers pursuant to § 544(b), the Trustee must step into the shoes of an

5   unsecured creditor who "'had a viable claim against [the] debtor at the time the bankruptcy

6   petition was filed.'"  In re Acequia, 34 F.3d 800, 807 (9th Cir. 1994) (quoting Karnes v.

7   McDowell, 87 B.R. 554, 558 (Bankr. S.D. Ill. 1988)).  Here, the Trustee asserted his right to

8   avoid the transfer based on, among other claims, the existence of an unsecured claim filed by

9   the Securities and Exchange Commission on behalf of the defrauded investors.  The

10   Investors claim that the Trustee lacks standing under § 544(b) because the SEC withdrew its

11   claim against the AFI bankruptcy estate on February 26, 2004.  Because the SEC possessed

12   a valid unsecured claim when AFI's bankruptcy petition was filed on October 22, 2001, the

13   Trustee has standing to avoid transfers under § 544(b).  In re Acequia, 34 F.3d at 807.

14   Moreover, even though a creditor may have only had a claim against one of the AFI entities,

15   the order consolidating the AFI bankruptcies allows the Trustee to use the existence of a

16   single creditor's claim to avoid fraudulent transfers made by any of the AFI entities.  In re

17   Bonham, 229 F.3d 750, 764 (9th Cir. 2000).

18       Additionally, as the Ninth Circuit held in Mackenzie, "[o]ne creditor of any amount

19   will suffice for the purposes of § 544(b).  In this case, at least one unsecured creditor existed,

20   and Cal. Civ. Code §§ 3439.04(a) and 3439.08(a) provide California state law allowing an

21   unsecured creditor to reach the transfers made by AFI to Mackenzie in 1996 and 1997."

22   Mackenzie, 525 F.3d at 703 (citations omitted).  The Ninth Circuit's conclusion that an

23   _____

24   [4/]    In addressing these issues, this Court reviews the Bankruptcy Court's legal rulings on a motion for summary judgment de novo, although findings of fact are reviewed for clear

25   error.  In re Kaypro, 218 F.3d 1070, 1073 (9th Cir. 2000).  The Bankruptcy Court's evidentiary rulings are reviewed for an abuse of discretion.  In re Smith's Home Furnishings,

26   Inc., 265 F.3d 959, 963 (9th Cir. 2001).  Awards of prejudgment interest are also reviewed for an abuse of discretion.  Agretech, 916 F.2d at 533.  Discretionary rulings should not be

27   disturbed without a definite and firm conviction that the Bankruptcy Court committed a clear error of judgment.  See In re Lowenschuss, 67 F.3d 1394, 1399 (9th Cir. 1995).

28

1    unsecured creditor existed and provided the Trustee with standing to avoid the transfers at

2    issue is law of the case and binding on this Court and the Bankruptcy Court.  See United

3    States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997).

4           The Investors additionally argue that the adversary proceedings have squandered the

5    debtor's assets and should have been brought pursuant to California Corporations Code

6    section 15666's provisions related to distributions made by insolvent partnerships rather

7    than as fraudulent transfer avoidance actions.  Neither of these arguments provides a defense

8    to the Trustee's claims.  Whether the Trustee has pursued the most economical and efficient

9    litigation strategy has no bearing on the legal sufficiency of the claims involved in the

10   appeals pending before this Court.  Finally, the Investors have offered no authority in

11   support of their argument that California Corporations Code section 15666 is the exclusive

12   remedy in this situation.  Avoidance actions are commonly commenced against investors of

13   Ponzi schemes.  See, e.g., Agretech, 916 F.2d 528; In re United Energy Corp., 944 F.2d 589;

14   In re Slatkin, 310 B.R. 740 (C.D. Cal. 2004).  To require application of partnership law

15   rather than fraudulent conveyance principles in such situations could encourage the

16   development of Ponzi schemes relying on the sale of partnership interests rather than other

17   types of investment vehicles if those who invest in such schemes were not subject to

18   avoidance actions.  In the absence of controlling legal authority, the Court declines to adopt

19   such a rule.  See Scholes v. Lehmann, 56 F.3d 750, 755 (7th Cir. 1995) (allowing fraudulent

20   conveyance law to avoid transfers made in Ponzi scheme which involved the sale of limited

21   partnerships); see also Agretech, 916 F.2d at 540-41.

22          B.      The Applicability of Affirmative Defenses Asserted by the Investors

23          The Investors contend that the Bankruptcy Court improperly rejected their affirmative

24   defenses of in pari delicto, unclean hands, offset, recoupment, and equitable earmarking.

25   With respect to the Investors' arguments concerning the original trustee's involvement with

26   AFI prior to her appointment, the Bankruptcy Court's appointment of the successor trustee

27   forecloses their unclean hands and in pari delicto defenses.  FDIC v. O'Melveny & Myers,

28   61 F.3d 17, 18 (9th Cir. 1995) ("[D]efenses based on a party's unclean hands or inequitable

1   conduct do not generally apply against that party's receiver.  While a party may itself be

2   denied a right or defense on account of its misdeeds, there is little reason to impose the same

3   punishment on a trustee, receiver or similar innocent entity that steps into the party's shoes

4   pursuant to court order or operation of law.").

5          The Investors' assertion of offset, recoupment, and equitable earmarking defenses all

6   attempt to prevent the Trustee from avoiding the transfers to them on the ground that as

7   defrauded investors, they possess offsetting claims against AFI for the amounts that the

8   Trustee seeks to recover from them.  While the Investors' concerns may be relevant to

9   CUFTA's "reasonably equivalent value" inquiry, they do not provide independent

10  affirmative defenses to the Trustee's avoidance actions.  In re Acequia, 34 F.3d at 817 ("[A]

11  fraudulent conveyance cannot be offset against or exchanged for a general unsecured

12  claim."); see also id. ("'The reason [for the 'no setoff' rule] is, to permit this to be done

13  would defeat the right to recover the [conveyance] and render the statute futile.  In such a

14  case the transaction is single [as opposed to mutual], and results in a depletion of the fund

15  that would otherwise have gone to the creditors. . . . [T]he right to offset is denied, because

16  the estate has been depleted to the detriment of creditors of like class, and to allow the right

17  of set off would perpetuate the depletion.'") (quoting Mack v. Newton, 737 F.2d 1343, 1366

18  (5th Cir. 1984)); In re United Energy Corp., 944 F.2d at 597 ("It is true that a fraudulent

19  conveyance cannot be offset against or exchanged for a general unsecured claim.").  The

20  Bankruptcy Court therefore properly rejected the Investors' affirmative defenses.

21          C.      The Propriety of the Bankruptcy Court's Evidentiary Rulings

22          The Investors also challenge several of the Bankruptcy Court's evidentiary rulings.

23  The only evidentiary rulings the Investors specifically identify, however, are the Bankruptcy

24  Court's decision overruling the Investors' objections to the expert report submitted by

25  Ronald Durkin, the exclusion of the Farr Declaration and Michiels Report, and the

26  admission of AFI's business records.[5]  The Court concludes that the Bankruptcy Court did

27  

28  [5]      To the extent the Investors challenge other unspecified evidentiary rulings, they have
    waived them by failing to adequately develop their arguments in their briefs or provide
    citations to the record.  Kohler v. Inter-Tel Technologies, 244 F.3d 1167, 1182 (9th Cir.

1   not abuse its discretion when it ruled on the admissibility of the Durkin Report, Michiels

2   Report, Farr Declaration, or AFI's business records.[6/]  See In re Smith's Home Furnishings,

3   Inc., 265 F.3d at 963.  Moreover, as discussed above, Eisenberg's plea agreement and the

4   Eisenberg Declaration, conclusively establish the existence of a Ponzi scheme and AFI's

5   fraudulent intent.[7/]  As a result, even if the Bankruptcy Court's evidentiary rulings were in

6   error, any such error was harmless.  Duran v. City of Maywood, 221 F.3d 1127, 1130 (9th

7   Cir. 2000) ("'To order reversal on the basis of an erroneous evidentiary ruling, we must find

8   not only that the district court abused its discretion but also that the error was prejudicial.'")

9   (quoting Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir. 1999)).

10          D.      The Liability of an Investor who Received Transfers for the Purported Benefit

11                  of a Third-Party

12          San Diego argues that she is uniquely situated because she alone among the Investors

13   received transfers from AFI as a custodian for a minor.  Without specifically addressing the

14   issue, the Bankruptcy Court granted judgment in favor of the Trustee.  On appeal, San Diego

15   contends that as a custodian, she never possessed "dominion and control" over the funds

16   transferred to her by AFI because those funds were for the benefit of the minor.  While it is

17   true that courts have refused to order transferees to return funds received by them on behalf

18   of others when it would be inequitable to do so, see, e.g., In re Bullion Reserve, 922 F.2d

19   544, 548-49 (9th Cir. 1991) (declining to avoid transfer where "it would be 'inequitable' to

20   _____

21   2001) ("Issues raised in a brief which are not supported by argument are deemed

22   abandoned."); see also Bratton v. Roadway Package Sys., Inc., 77 F.3d 168, 173 n.1 (7th
     Cir. 1996).

23   [6/]      The Investors' objection to the admission of AFI's business records on "chain of

24   custody" grounds is particularly weak given their responses to the Trustee's Request for
     Admissions in which the Investors admit the authenticity of many of the same documents.

25   See ER, pp. 1588-1707 & 1829-1848

26   [7/]      In Mckenzie, the Ninth Circuit rejected the Investors' argument that Eisenberg's

27   guilty plea was insufficient to establish the existence of a Ponzi scheme.  See Mckenzie, 525
     F.3d at 704 ("Eisenberg's plea demonstrates the existence of fraudulent intent and a Ponzi

28   scheme, and Mackenzie failed to identify evidence in the record that created a genuine issue
     of material fact as to either issue.").

1    allow recovery against an entity merely because it had 'technically . . . received the

2    funds . . . ,' if the entity had 'never actually controlled the funds.'") (quoting In re Chase &

3    Sanborn Corp., 848 F.2d 1196, 1200 (11th Cir. 1988)), San Diego cites to no case in which

4    the "dominion and control" test was applied to shield a custodian from a Trustee's avoidance

5    action.

6          Here, the only evidence that San Diego was a custodian comes from her own

7    declaration.  Nothing in the investor agreement between her and AFI or in the payments

8    from AFI to her reference that she was ever serving as a custodian.  There is also no

9    evidence that San Diego complied with California's Uniform Transfers to Minors Act and

10   San Diego has no evidence that there were any limitations on her control of the money she

11   received from AFI, such as a trust agreement or other contract through which she was

12   purportedly managing assets for the minor.  Moreover, according to the California Probate

13   Code, a custodian "shall . . . [t]ake control of custodial property" and may "in the

14   custodian's discretion and without liability to the minor or the minor's estate, . . . retain any

15   custodial property received from a transferor."  Cal. Prob. Code §§ 3912(a)(1) & (b)(2).  It

16   therefore appears, as a matter of law, that San Diego had control of the funds transferred to

17   her by AFI and that the Trustee could properly avoid those transfers.[8/]

18   IV.   Conclusion

19         For all of the foregoing reasons, the Court affirms in part, and reverses in part, the

20   judgments entered in favor of the Trustee.  Specifically, the Court, as affirmed by the Ninth

21   Circuit in Mckenzie, reverses the Bankruptcy Court's conclusion that AFI did not receive

22   "reasonably equivalent value" from the Investors up to the amount they invested but affirms

23   _____

24   [8/]      The Court's conclusion is further supported by the fact that a contrary result would
     allow transferees the ability to defeat avoidance actions merely by stating that they were
25   serving as custodians for others.  Particularly where there is no evidence that the transferee
     complied with any of the formalities to create a custodial relationship, by for instance, filing
26   taxes on behalf of the beneficiary or complying with the Uniform Transfers to Minors Act,
     application of the "dominion and control" test is not warranted.  See In re Incomnet, Inc.,
27   299 B.R. 574, 580 (B.A.P. 9th Cir. 2003) ("As this is not a 'conduit' case, this panel must
     fall back on the general rule that the party who receives a transfer of property directly or
28   indirectly from the debtor is the initial transferee.").

-8-

1  the judgments for the amounts transferred to them by AFI in excess of whatever principal

2  they invested.  Because these actions are being remanded, any discussion of the Bankruptcy

3  Court's discretion to award prejudgment interest is premature.[9]  The Court rejects the

4  Investors' remaining arguments and declines to address the issues raised in the Trustee's

5  cross-appeals.[10]  The Bankruptcy Court's rulings are affirmed in all other respects.

6          These matters are remanded to the Bankruptcy Court for further proceedings

7  consistent with this opinion and the Ninth Circuit's opinion in Mckenzie.

8          IT IS SO ORDERED.

9   DATED:  September 4, 2008

10                                                    _____

11                                                                   Percy Anderson
                                                           UNITED STATES DISTRICT JUDGE
12

13

14

15

16

17

18

19

20

21

22

23  ───────────────────

24  [9]        The Court notes, however, that even according to the interpretation of Agretech and
    In re United Energy Corp. advanced by the Investors, they have never had a viable claim to
25  amounts transferred to them in excess of the principal invested by each of them.  It may
    therefore be appropriate, at a minimum, for the Trustee to be awarded prejudgment interest
26  on the amounts the Investors received as "interest" on their investments in excess of the
    principal they invested.
27

28  [10]       The Court expresses no opinion on the other theories of recovery advanced by the
    Trustee in his Complaints.

-9-